SIMON BIGLER, Respondent, *v.* JOSEPH M. HALL. et al., Appellants.

Defendants contracted to deliver to plaintiff, at B., certain logs then at specified places on the bank of the river S., plaintiff to pay sixteen dollars per 1,000 feet, when account of measurement was handed in. The logs were measured and paid for as agreed. Before the logs were rafted, a portion were swept away by a sudden freshet in the river, and were lost. In an action to recover the price paid for the logs thus lost, *held* (REYNOLDS, C., dissenting), that the contract to deliver was absolute, and defendants were liable, although the loss occurred without negligence upon their part; also that it was immaterial whether or not the contract was considered as an executed contract of sale, and whether the title passed to plaintiff or not, as the absolute and unqualified obligation to deliver still existed, and defendants' failure to fulfill rendered them liable.

Also, *held*, that the plaintiff was not bound to prove the quantity not delivered by the measurement so made; that it was a fact ascertainable. and proper to be established by any witness having knowledge.

(Submitted March 11, 1873; decided June term, 1873.)

APPEAL from judgment of the General Term of the Supreme Court, in the sixth judicial district, entered upon an order directing judgment on a verdict in favor of the plaintiff, and denying a motion for a new trial.

This action was brought to recover damages for the non-delivery of all the logs specified in the following contract:

" DEPOSIT, N. Y., *April* 30, 1864.

" Contract between John Luscomb and Joseph M. Hall, of the first party, and Simon Bigler, of the second party.

" Said Luscomb and Hall do agree to deliver, in the Susquehanna river, at Binghamton, in rafts, from 150 to 200,000 feet of pine logs, above the Pratt & Tyler saw mill. Said lumber comprises a lot of logs, about 1,000 in number, six miles above Susquehanna Depot, now on the bank of the river, and about fifty more about one-half a mile farther up, and about 400 near Windsor, fifty of the poorest of these 400 may be thrown out and not rafted, more or less. They are all to be delivered as above. They are all to be measured in the log, by Mr. S. R. Carpenter. Said logs shall be rafted as soon as the middle of June, 1864, and delivered as soon as the water is high enough thereafter to run them. Said Bigler is to pay sixteen dollars per 1,000 feet, one-half at two months, and the balance at three months, in good bankable paper, to be dated when the account of measurement is handed in, $200 to be paid within six days of this date, by mail.

(Signed)
" J. M. HALL.
" JOHN LUSCOMB.
" SIMON BIGLER, *by James.*"

The logs were measured by Carpenter and paid for as agreed. A portion of the logs were lost by a freshet in the river, and on the trial the jury found a verdict for the plaintiff for the sum of $1,200, the price paid for the logs, which were not delivered.

The main question on the trial of the action was, whether the defendants were liable absolutely for the contract price of the lumber in the logs that were not delivered, or were only liable in case such logs were lost through their negligence. The ruling was that the defendants were liable absolutely.

Further facts appear in the opinion. Exceptions were ordered to be heard at first instance at General Term.

*Alexander Cumming* for the appellants. The logs were at plaintiff's risk as soon as they were measured and paid for. (*Terry* v. *Wheeler*, 25 N. Y., 520; *Russell* v. *Carrington*, 42 id., 118, 124, 125; 2 Kent's Com., 496–499; *Rugg* v. *Minett*, 11 East, 210; *Whitehouse* v. *Frost*, 12 id., 614; *Lansing* v. *Turner*, 2 J. R., 13.)

*Solomon Judd* for the respondent. The contract was executory and the title to the logs remained in defendants, and they were at their risk. (*Joyce* v. *Adams*, 8 N. Y., 291, and cases cited; 2 Kent's Com., 495.) Defendants contracted to deliver the logs at a specified place, and their liability for the logs is the same, whether the title to them remained in them or they were bailees. (*Harmony* v. *Bingham*, 12 N. Y., 99; 11 id., 25; *Beebe* v. *Johnson*, 19 Wend., 500; *Girard* v. *Prouty*, 34 Barb., 454; *Warfield* v. *Watkins*, 30 id., 395; 2 Pars. on Con. [4th ed.], 184, 185; *Lord* v. *Wheeler*, 1 Gray, 282; Story on Bailments, § 36.)

LOTT, Ch. J. The defendants, by the express terms of the contract, for the breach of which this action was brought, did "agree to deliver, in the Susquehanna river at Binghamton, in rafts, from one hundred and fifty to two hundred thousand feet of pine logs, above the Pratt & Tyler saw-mill." The logs were designated as comprised of two lots, lying in specified localities, all of which (except fifty of the poorest, in one lot, and which might be thrown out and not rafted) were to be delivered as above stated. The quantity was to be ascertained by Mr. S. R. Carpenter's measurement of the logs, and the plaintiff was (as it was expressed in the contract) "to pay sixteen dollars per thousand feet, one-half at two months and the balance at three months in good bankable paper, to be dated when the account of measurement is handed in, $200 to be paid within six days of this date, by mail"—evidently meaning that the sum of $200 was to be paid to the defendants by being sent through the mail, within six days from the date of the contract, and that payment of the balance

of the price to be paid was to be made, as soon as the plaintiff was informed of the quantity by such measurement, by his two notes of equal amount, to be dated when the account of such measurement was handed in, and to be payable in bankable money, one in two months and the other in three months from their respective dates. The agreement also specified the time when such delivery was to be made. There is no ambiguity or uncertainty in any of its terms. It is a contract for the absolute delivery of the logs at a designated place and time, for a price to be ascertained in a specified manner.

Such being the construction of the contract, and the plaintiff having paid the defendants the whole amount for which he was liable, they were bound to deliver the logs according to its terms, and they were not discharged from the obligation by their inability to do it, in consequence of freshets which caused a loss of some of them. They did not make any provision against such a casualty or accident. It was one which they could have guarded against, and it is not unreasonable to assume that both parties contemplated the possibility of such a contingency in fixing the price to be paid by the plaintiff. Assuming, then, that the legal obligation of the defendants was as above stated, it is immaterial whether the logs were lost through their negligence or not. That question is not involved in the case.

It follows that the judge at the circuit properly ruled that the plaintiff was entitled to recover for what lumber he paid for and had not been delivered to him by the defendants according to their agreement, and as such payment was made at least two years before the day of trial, he, in charging the jury that the plaintiff was also entitled to interest on that sum for one year and ten months, charged more favorably to the defendants than the law required. The error, if any, was to the plaintiff's prejudice and their advantage. They therefore are not aggrieved by it, and have no cause of complaint on account of it.

The plaintiff, in proving the quantity that was not deliv-

ered, was not required to do it by Mr. Carpenter's measurement, on the ground or objection taken by the defendants' counsel to other evidence offered for that purpose, that the parties had "agreed upon a mode of measurement between themselves." It was a fact, ascertainable and proper to be established by any witness having sufficient knowledge to testify on the subject.

It may be proper to add, that it does not appear to have been made a question on the trial whether the contract was a contract of *sale*, but the points litigated seem to have been whether the defendants were absolutely liable for all of the logs that had not been delivered, on the construction of the agreement that he had bound himself, without any qualification of his obligation, to make *a delivery of all*, or whether they were only liable for such as had been lost or not delivered through their fault or negligence. I have consequently not considered it. It seems to me, however, immaterial. If it can be so construed, and if the logs mentioned in the contract became the property of the plaintiff as soon as they were measured and paid for by him, as the defendants claim on this appeal, it does not follow, as they say, that "from that time they were at his risk." The absolute and unqualified obligation of the defendants to *deliver* them at the place designated for that purpose still existed, and their failure to fulfill and discharge it, and their duty growing out of it, made them liable for the damages growing out of its breach.

In any aspect of the case the plaintiff was entitled to recover. It follows that the judgment appealed from is not erroneous, and it must, consequently, be affirmed, with costs.

REYNOLDS, C. (dissenting). The logs were designated or identified by their location at the time of the contract, and were to be delivered in the Susquehanna river at Binghamton in rafts. They were to be rafted as soon as the middle of June, 1864, and delivered as soon thereafter as the water should be high enough to run them. They were to be

measured in the log by S. R. Carpenter, and paid for at sixteen dollars per thousand feet; one-half at two months and the balance at three months in good bankable paper. Two hundred dollars was to be paid within six days after the date of the contract. The required measurement was made by Carpenter's producing 255,408 feet of lumber, all of which was paid for, at the stipulated price, on or before the 1st day of June, 1864. A portion of the logs were never delivered having been carried away by an unprecedented freshet, it is claimed without any fault of the defendants, and the recovery was had for the supposed difference between the amount of lumber actually paid for and that actually delivered upon the ground that the logs and lumber were at the risk of the defendants until actually delivered, and if the title did not pass to the plaintiff when the lumber was measured and paid for; the recovery should be sustained. It appears to me that everything was done by way of identification, ascertainment of quantity and payment of price to make an executed contract of sale, and that the title passed to the plaintiff. Nothing remained but actual delivery, and that in very many cases, is not essential to the transfer of title to a purchaser. It would hardly be claimed that if a party went to a merchant and selected, purchased, and paid for a valuable article in his line of business, he did not acquire the title because it was left in the merchant's store to be sent to the residence of the purchaser. The case of *Terry* v. *Wheeler* (25 N. Y. 520), appears to be decisive of the one at bar. I think, also, the principle of the case of *Groat* v. *Gile,* decided by this commission in the year 1872 (51 N. Y., 431) must also be controlling. The actual delivery of the logs as the contract provided was a very important element as it is in almost every contract of sale. Both parties appreciated its importance and were doubtless familiar with its perils. It cannot be supposed that the plaintiff intended to pay for more lumber than he received, or that the defendants took pay for more than they intended to deliver. But a contingency happened which neither party anticipated, and was not specially provided for.

The defendants were bound to use their utmost efforts to deliver all the logs for which they had been paid; but they were not insurers. They offered to show that the logs were lost by no fault or negligence on their part, and they should have been allowed to do so, as I think upon that question alone depended their liability.

There should be a new trial.

All concur for affirmance except REYNOLDS, C., dissenting.

Judgment affirmed.